IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| M.A. DEATLEY CONSTRUCTION, INC., a Washington corporation, and ASCORP, INC., dba DEBCO CONSTRUCTION, INC., an Idaho corporation,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF LEWISTON, an Idaho municipal corporation; and NEZ PERCE COUNTY, a public corporation of the State of Idaho,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.  CV 04-598-N-EJL-MHW<br><br><br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

On November 5, 2004, Plantiffs M.A. DeAtley Construction, Inc. ("DeAtley") and Ascorp, Inc. dba Debco Construction, Inc. ("Debco") (collectively "Plaintiffs") filed this action in the Second Judicial District in and for the County of Nez Perce against Defendant City of Lewiston ("the City") and Defendant Nez Perce County ("the County") (collectively "Defendants"), asserting concurrent claims against both the City and the County for violation of

**Report and Recommendation - Page 1**

Idaho competitive bidding laws and federal law, civil conspiracy, deprivation of a constitutionally protected property interest, and violation of 42 U.S.C. § 1983.  Plaintiffs' claims arise out of alleged bidding improprieties by Steelman-Duff, Inc. ("Steelman-Duff"), which Plaintiffs claim prevented either Plaintiff DeAtley or Plaintiff Debco from being the "lowest responsible bidder" for the Lewiston-Nez Perce County Regional Airport Runway Reconstruction Project ("the Project") conducted by the City and the County.  This case was removed from state court to this Court on November 24, 2005 based on a federal question.  The parties have agreed to dismiss Plaintiff Debco based on the understanding that Debco's bid would have been deemed non-responsive, and DeAtley would have been considered the second lowest bidder after Steelman-Duff.

Currently pending before the Court for its consideration are: (1) Defendant City of Lewiston's Motion for Partial Summary Judgment (Docket No. 34), filed on September 2, 2005 and joined by Defendant Nez Perce County[1]; (2) Defendant City of Lewiston's Amended Motion for Summary Judgment (Docket No. 43), filed on September 21, 2005; (3) Defendant Nez Perce County's Motion to Strike (Docket No. 59), filed on October 31, 2005; (4) Plaintiffs' Motion to Strike (Docket No. 70), filed on November 7, 2005; and (5) Defendant Nez Perce County's Second Motion to Strike (Docket No. 81), filed on November 21, 2005.  Having reviewed all briefing submitted, as well as other pertinent documents in the Court's file, and having heard oral arguments, the Court recommends that summary judgment be granted in favor of

---

[1] Initially, Defendant City of Lewiston filed its Motion for Partial Summary Judgment (Docket No. 34) on September 2, 2005.  On that same day, Defendant Nez Perce County filed a (1) Joinder in Defendant City of Lewiston's Motion for Partial Summary Judgment and (2) Memorandum in Support of Summary Judgment (Docket No. 38).  On September 9, 2005, Defendant City of Lewiston then filed a Joinder in Defendant Nez Perce County's Motion for Summary Judgment (Docket No. 40).  On September 21, 2005, Defendant City of Lewiston filed its Amended Motion for Summary Judgment (Docket No. 43) supported by its papers filed in conjunction with its previous Motion for Partial Summary Judgment..  The Court will refer to this collection of filings as Defendants' Motion for Summary Judgment.

**Report and Recommendation - Page 2**

Defendants as to DeAtley's constitutional claims.  The Court further recommends that summary judgment be granted in favor of Defendants with respect to the state law civil conspiracy claim.  After the dismissal of the federal claims and the civil conspiracy claim, the only remaining state law claim relates to Idaho's competitive bidding statutes.  Since there are factual disputes between the parties as to the application of the competitive bidding laws to this case, and because these are uniquely state law issues, this Court recommends the claim be remanded back to state court.  The Court further finds the remaining motions to strike are moot.

# I.
# Background

In April 2004, the Nez Perce County Regional Airport posted an advertisement soliciting bids for the Project.  The Project Engineer, Riedesel & Associates, and the County conducted a Pre-Bid meeting on May 4, 2004.  On May 14, 2004, four entities, Steelman-Duff, Poe Asphalt Paving, Inc. ("Poe"), Debco, and Plaintiff Deatley submitted bids for the Project.  The Project required substantial quantities of aggregate.  The bid papers stated that the contractor must provide all the materials to complete the work aside from those specified in the contract.  The contract did not specify any "owner furnished materials."

Upon considering the bids, both the City and the County designated Debco and Deatley as the second and third lowest responsive bidders, respectively, and Steelman-Duff as the "lowest responsible bidder."  After the actual submission of the bids, and prior to the award of any of the bidders, DeAtley filed an "offical protest" with Riedesel on May 18, 2004 relating to errors in Debco's bid that rendered Debco's bid "irregular and no longer valid when comparing with others."  (Barton Aff, Ex. H).  After reviewing the bids for the Project on May 19, 2004,

Riedesel & Associates confirmed that Debco's bid was irregular and that Steelman-Duff was the "lowest responsible bidder" for the Project. The City confirmed the award of the contract for the contract during the July 16, 2004 City Council meeting, while the County confirmed its award of the contract to Steelman-Duff during a County Commissioners meeting on June 23, 2004. The necessary parties signed the actual contract on July 14, 2004.

Plaintiffs assert that after the opening of the bids, they learned that Steelman-Duff had entered into a "secret agreement" with the County to lease the County-owned Sixth Street Quarry. Defendants vigorously dispute that the County and Steelman-Duff entered into any type of agreement to lease the Sixth Street Quarry because such an agreement is not permitted under Idaho law. However, it is undisputed that Hiram and Jerry Cox of Steelman-Duff contacted Jerry Black, Nez Perce County Road Department Supervisor to discuss the possibility of leasing the County-owned Sixth Street Quarry to complete the Project. Jerry Black testified at the June 1, 2004 County Commissioners meeting that he intended to enter into a tentative agreement with Jerry Cox to lease the Quarry and he spoke to Commissioner Vincent to obtain preliminary approval to enter into such an agreement. Jerry Black also testified at the Commissioners meeting that "we [Jerry Black and Jerry Cox] didn't work anything up at the time, because I believe that they had a couple other rock sources that they were also looking to use." (Plaintiffs' Statement of Additional Undisputed Material Facts, Ex. C, p. 2, ll. 18-19). In addition, Jerry Black and Jerry Cox testified during their respective depositions that Jerry Black informed Jerry Cox that he did not have the authority to enter into leases of County property and that Steelman-Duff needed to bring a proposal to the County Commissioners for their consideration.

Neither Deatley nor Debco were aware of this meeting between Jerry Cox and Jerry Black and neither Plaintiff was given the same opportunity to use the Sixth Street Quarry for the Project. Plaintiffs further allege that Mr. Lonnie Simpson of Debco inquired at the pre-bid conference as to whether there could be any owner furnished material source for the production of aggregate. In response, the Owner's representative and Project Engineer, Reisdel & Associates responded in the negative.

After Plaintiffs became aware of the agreement on May 21, 2004, DeAtley submitted a letter to the Project Engineer, Riesdel & Associates, protesting Steelman-Duff's bid. In the letter, DeAtley pointed out what they deemed to be the fatal flaws in Steelman-Duff's bid relating to its alleged collusion with the County to enter into the purported secret agreement, which they claimed gave Steelman-Duff an unfair bidding advantage. Steelman-Duff replied to Deatley's protest, asserting that its use of the Sixth Street Quarry was only a possibility and it actually formulated its bid upon the use of a least two other quarries, of which the Sixth Street Quarry was the second choice. In addition, upon receipt of DeAtley's protest and Steelman-Duff's reply, Joe Barton, Area Manager for Riesdel & Associates, began an investigation into DeAtley's allegations. Mr. Barton reviewed and considered DeAtley's protest and concluded that Steelman-Duff was the lowest responsible bidder because:

> (a) the County-owned quarry was available to any prospective bidder so Steelman Duff, Inc. did not have an unfair advantage; (b) Steelman-Duff did not have a legally-binding agreement to use the County-owned quarry; and (c) since the bid specifications did not require identification of the quarry, but instead required that the quarry material meet specifications, the source of the quarry material was inconsequential to the bidding process and the award of the Project.

(Barton Aff. ¶ 6).

**Report and Recommendation - Page 5**

When Steelman-Duff was designated the lowest responsible bidder, Jerry Cox sent a fax "confirming the agreement" to lease the Quarry. In apparent reference to this fax, Jerry Black testified at the County Commissioners meeting that since the City had accepted Steelman-Duff's bid, Steelman-Duff had "come back and asked to, the board to go ahead and formalize that agreement that we were looking at." (Plaintiffs' Statement of Additional Undisputed Material Facts, Ex. C, p. 2, 22-25). Upon listening to Jerry Black's history of his conversations with Steelman-Duff representatives regarding the Quarry, the Commissioner voted 2-1 to adopt Resolution No. 2004-06-069, which sought to formally approve the agreement negotiated by Jerry Black.

On that same day, DeAtley, represented by counsel, submitted a second protest letter to Nez Perce County challenging the propriety of the lease on the basis that 1) Nez Perce County had failed to open the Quarry to public auction as required by Idaho law; 2) the lease to Steelman-Duff amounted to favoritism and fraud in public contracting in violation of Idaho law; and 3) the County did not give public notice of the lease as required by Idaho law. Commissioner Van Tassel expressed some reservations regarding the propriety of Jerry Black's conversations with Steelman-Duff without providing the same opportunity to the other bidders and decided to vote against the Resolution. However, the other two Commissioners felt adequately assured by the County attorney that, despite DeAtley's objections, they stood "on legal ground" in adopting the Resolution. (Plaintiffs' Statement of Additional Undisputed Material Facts, Ex. C, p. 3, l. 18).

The Commissioners later canceled the Resolution to lease the Quarry because any resolution approving the lease of County property must be unanimously approved. To cure this defect, the Commissioners passed Resolution No. 2004-06-075, which declared the County's

**Report and Recommendation - Page 6**

intent to offer a Land and Mineral Lease for the Sixth Street Quarry at public auction, by a 2-1 vote. Again, Commissioner Van Tassel voted against this Resolution because of his reservations regarding the timing of the auction. Commissioner Van Tassel stated in objection to the Resolution, "I would have to say that what we are looking at here is an action that puts step A behind step B. I think this should have been done well up front and the same concerns that I had when we last addressed this environment still stand." (Plaintiffs' Statement of Additional Undisputed Material Facts, Ex. M, p. 4, ll. 4-8). Steelman-Duff acquired the lease at the auction as the sole bidder.

Debco submitted a protest to the Steelman-Duff on June 14, 2004 and DeAtley submitted another protest letter. Nonetheless, after considering the bids submitted and upon the recommendation of Riedesel, the City selected Steelman-Duff as the "lowest responsible bidder" and confirmed award of the contract for the Project to Steelman-Duff at the City Council meeting on June 14, 2004. After the City Council meeting, Riedesel issue the Notice of the Award of the Project to Steelman-Duff on June 15, 2004 and Steelman-Duff signed the Acceptance of Notice of Award on June 16, 2004. A day later, on June 17, 2005, the FAA concurred with Riedesel's determination that Steelman-Duff was the "lowest responsible bidder" on the Project. At the end of the line of approval, the County also selected Steelman-Duff as the "lowest responsible bidder" and confirmed award of the contract for the Project to Steelman-Duff at the County Commissioners meeting on June 23, 2004. The necessary parties signed the actual contract on July 14, 2004.

Because of this alleged "secret and unlawful prebid agreement" and the alleged competitive advantage it provided to Steelman-Duff, which thereby prevented Deatley from being the "lowest responsible bidder," Plaintiffs filed this action. DeAtley asserts as total

**Report and Recommendation - Page 7**

damages $902,185.00 for lost profits and overhead expenses, including $14,250.00 in bid preparation costs. More accurate computations of DeAtley's bid preparation costs reveal the actual costs to be $7,805.00.

## II.
## Standard of Review

When reviewing a motion for summary judgment, the proper inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (1993). A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). It is not enough for the [non-moving] party to "rest on mere allegations of denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability." *Id*. at 249-250. "The mere existence of a scintilla of evidence in support of the [defendant's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [defendants]." *Id.*

The Ninth Circuit has consistently applied the standard for granting summary judgment. *Musick v. Burke*, 913 F.2d 1390 (9th Cir. 1990); *Pelletier v. Federal Home Loan Bank*, 968 F.2d 865 (9th Cir. 1992); *Bieghler v. Kleppe*, 633 F.2d 531 (9th Cir. 1980).

In determining whether a material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th. Cir. 1981).

The Ninth Circuit has recently emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992).

> In order to withstand a motion for summary judgment, the non-moving party (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

### III.
### Discussion

Defendants argue they are entitled to summary judgment because (1) Plaintiffs have failed to establish that Steelman-Duff had either a factual or legal agreement with Nez-Perce County to use the Sixth Street Quarry; (2) Plaintiffs do not have procedural due process rights, or, if they do, they were afforded adequate due process; (3) Plaintiffs do not have substantive due

**Report and Recommendation - Page 9**

process rights; and (4) even if Plaintiffs have established procedural or substantive due process violations, the extent of damages must be limited to the cost of preparing the bid for the project as a matter of law.

For purposes of this Motion, the Court will view the facts and inferences in favor of the non-moving party -- that a "secret agreement" did exist, and that it gave Steelman-Duff a competitive bidding advantage, which prevented DeAtley from becoming the "lowest responsible bidder."

### A. Federal Claims

#### 1. Procedural Due Process

The core of due process is the protection against arbitrary governmental action and has procedural and substantive components. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). The requirements of due process, either in their substantive or procedural form, only apply to those property interests protected under the Constitution. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). However, the Constitution does not create property interests; rather, a protected property interest is created when an individual has a reasonable expectation of entitlement deriving from "existing rules or understandings that stem from an independent source such as state law." *Id.*

In Idaho, the lowest responsible bidder on a public works project has a property interest protected under the Constitution. *See Scott v. Buhl Joint School District No. 412*, 852 P.2d 1376, 1381 (Idaho 1993). In *Scott*, the Idaho Supreme Court held that the Idaho competitive bidding statutes, which mandate that a public contract be awarded to the "lowest responsible bidder," create a property interest in the award of the contract for the lowest responsible bidder. *Id.* at 1382. In this instance, the competitive bidding statutes applicable to the City of Lewiston and

**Report and Recommendation - Page 10**

Nez Perce County required the respective entities to award a public works contract in excess of $25,000 to the "lowest responsible bidder."  I.C. 50-341(c)[2]; I.C. § 31-4003[3].  As the Airport Project fell within the mandate of these statutes, the City and the County were required to award the Airport Project to the "lowest responsible bidder"– thus creating a property interest in the award of the Airport Project contract for the lowest bidder.

The Court assumes for purposes of this motion that Deatley was the lowest responsible bidder, rather than Steelman-Duff, and was deprived of a property interest.  The next question is what process was due.  The Supreme Court has consistently held that some form of hearing is required before an individual is finally deprived of a property interest. *See Matthews v. Eldridge,* 424 U.S. 319 (1976); *see also Wolff v. McDonnell*, 418 U.S. 539, 557-558 (1974); *Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 596-597 (1931).  In order to satisfy the fundamental requirement of due process, the person or entity deprived of property must be provided an opportunity to be heard "at a meaningful time and in a meaningful manner."*See Scott*, 852 P.2d at 1382; *see also Armstrong v. Manzo*, 380 U.S. 545, 552  (1965).

Yet, the nature of the "hearing" due may vary according to circumstance.  " 'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances."*Matthews,* 424 at 334, *quoting Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961). "(D)ue process is flexible and calls for such procedural protections as the particular situation demands."*Id., quoting Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). A

---

[2]Repealed by S.L. 2005, Ch. 213 § 17.

[3]Repealed by S.L. 2005, Ch. 213, § 17

**Report and Recommendation - Page 11**

pre-deprivation hearing may be informal so long as the grieving party is given the opportunity to submit evidence to the proper authority.

The Court finds that Defendants complied with the strictures of due process. DeAtley had numerous opportunities to voice their objections to Steelman-Duff's bid. When DeAtley became aware of the pre-bid discussions between Jerry Black and Steelman-Duff to lease the Quarry, DeAtley submitted a letter protesting Steelman-Duff's bid. In its letter, DeAtley outlined the bases for its objections, which Riedesel & Associates, independent from the County, duly considered. Mr. Barton, Area Manager for Riedesel & Associates reviewed DeAtley's protest and conducted an investigation into DeAtley's concerns. While Mr. Barton's conclusion ultimately favored awarding the contract to Steelman-Duff, DeAtley's objections did not go unheeded.

In fact, Riedesel & Associates' recommendation to award the contract to Steelman-Duff did not conclude the matter. On June 1, 2004 the Commissioners conducted an official meeting and listened to Jerry Black's explanation regarding his discussions with Steelman-Duff. At this time, the Commissioners also considered DeAtley's protests, but nevertheless formally approved the agreement negotiated by Jerry Black with the adoption of Resolution No. 2004-06-069. On that same day, DeAtley, represented by counsel, submitted a second protest letter to Nez Perce County challenging the propriety of the lease. Again, the Commissioners considered DeAtley's protest and were assured by counsel that they were "on legal ground." In each of these letters, DeAtley was afforded the opportunity to submit evidence of their position to the proper authority. DeAtley attempts to discount its numerous opportunities to be heard as not being "meaningful" because "the County, the governmental entity supposedly deciding Debco's and DeAtley's protest, was the same entity who illegal conduct was the basis for the protest."

**Report and Recommendation - Page 12**

However, if DeAtley's and Debco's allegations of an unlawful secret agreement are true, then such conduct would not accord with state procedures and thus would be "random and unauthorized."

When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. *See Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986). In such cases where the claims resulted from random, unauthorized acts by a government employee, the Due Process Clause of the Fourteenth Amendment is not violated so long as the State provides a meaningful postdeprivation remedy. *Hudson v. Palmer*, 468 U.S. at 531, 533; *see also Parratt*, 451 U.S. at 541 ("In such cases, the normal predeprivation notice and opportunity to be heard is pretermitted if the State provides a postdeprivation remedy.").

Assuming DeAtley's protests of the Steelman-Duff's bid were not "meaningful" because of the County's allegedly unlawful acts, Plaintiffs have been provided other adequate post-deprivation remedies, of which they have availed themselves – namely, filing an action in state court seeking an injunction before the contract was awarded to Steelman-Duff and pursuing this action in federal court after its removal from state court. Because of the availability of a state court proceeding, DeAtley was not deprived of property without due process of law.

**2. Substantive Due Process**

Nor can DeAtley's claim against Defendants for violations of its substantive due process rights survive summary judgment. The substantive component of the Due Process Clause limits what governments may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities. *See Lewis* at 846. However "as

**Report and Recommendation - Page 13**

a general matter, the [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citation omitted).  In fact, the scope of substantive due process rights has been significantly curtailed in the more recent Supreme Court decisions. Addressing the substantive due process claim, therefore, requires scrupulous attention to the guideposts that have previously been established.

The Supreme Court, in deciding whether a government entity has violated substantive due process, has repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense....' " *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998), *quoting Collins v. Harker Heights*, 503 U.S. 115, 129 (1992).  For executive conduct, the Supreme Court has "for half a century now ... spoken of the cognizable level of executive abuse of power as that which shocks the conscience." *Id.*  Determining whether the challenged action rises to this level has been described as a "threshold" question in a challenge to an executive action. *Id.* at 847 n. 8.  Even more apposite to this case is the Supreme Court's conclusion that only fundamental rights and interests "deeply rooted" in our nation's history and " implicit in the concept of ordered liberty " qualify for the protection of substantive due process.  *Id.*

The right to an award of a public contract as the lowest responsible bidder "bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution," *Regents of University of Michigan v. Ewing*, 474 U.S. 214 (1985), such as freedom of choice in the areas of family, marriage, and procreation.  *See, e.g., Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78, 94-96 (1987);

**Report and Recommendation - Page 14**

*Zablocki v. Redhail*, 434 U.S. 374, 383-86 (1978); *Smith v. Organization of Foster Families*, 431 U.S. 816, 842 (1977); *Moore v. City of East Cleveland*, 431 U.S. 494, 498-506 (1977) (plurality opinion); *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 639-40 (1974). Nor is it "closely tied to respect for the teachings of history, solid recognition of the basic values that underlie our society, and wise appreciation of the great roles that the doctrines of federalism and separation of powers have played in establishing and preserving American freedoms." *Ewing*, 474 U.S. at 516*., quoting Griswold*, 381 U.S. 479, 501 (1965). Routine state-created contractual rights are not "deeply rooted in this Nation's history and tradition," and, although important, are not so vital that "neither liberty nor justice would exist if [they] were sacrificed." *Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990), *citing Bowers v. Hardwick*, 478 U.S. 186, 191-94 (1986)(citations omitted). Although this Court does not attempt to define the precise contours of substantive due process protection, the Court doubts the Supreme Court would conclude Plaintiffs' interest alleged to have been infringed here warrants the protection of substantive due process. For this reason, the Court recommends summary judgment be granted in favor of Defendants as to DeAtley's claim under the Due Process Clause of the Fourteenth Amendment, finding an analysis under "shocking the conscience" unnecessary.

### B. State law claims

### 1. Civil Conspiracy

The tort of civil conspiracy is not actionable in Idaho. *See McPheters v. Maile*, 138 Idaho 391, 64 P.3d 317, 321 (Idaho 2003); *Dahlquist v. Mattson*, 40 Idaho 378, 233 P. 883, 885 (Idaho 1925) ("A civil conspiracy itself is not a tort, and, until some act is done by the conspirators, there arises no cause of action, and when an act is done which amounts to an actionable tort, then

that is the gist of the action."). Therefore, DeAtley's civil conspiracy claim fails as a matter of law.

### 2. Violation of Competitive Bidding Laws

In its First Cause of Action, DeAtley alleges that Defendants violated Idaho Code § § 31-9003 and 50-431 and 49 CFR 18.36(b) when the County entered into an unlawful "secret agreement" with Steelman-Duff that gave Steelman-Duff a competitive bidding advantage. DeAtley argues that this "secret agreement" resulted in Defendants' failure to procure a competitive bid to ensure the protection of public funds and to prevent favoritism and fraud in their expenditure. In response, Defendants argue that there was no violation of the competitive bidding laws because no so-called "secret agreement" existed either factually or legally, which gave Steelman-Duff an unfair bidding advantage. In addition, Defendants argue that supposing such an agreement did exist, it did not give Steelman-Duff a competitive bidding advantage. The parties also ask the Court to consider whether the proper measure of damages for a violation of the competitive bidding laws should be limited to the bid preparation costs or whether it can include lost profits when the contracting entity engages in conduct that is tantamount to bad faith. However, because the Court recommends the dismissal of the federal claims, the Court will refrain from deciding whether a violation of the competitive bidding laws has occurred, and if so, what the proper measure of damages should be. Instead, the Court recommends the remaining claims be remanded to state court.

Once a federal court acquires removal jurisdiction over a case, it also acquires jurisdiction over pendent state claims. *Bright v. Bechtel Petroleum, Inc*., 780 F.2d 766, 771 (9th Cir. 1986). Dismissal of the federal claims does not deprive a federal court of the power to adjudicate the remaining pendent state claims. *Id.* However, "pendent jurisdiction is a doctrine

**Report and Recommendation - Page 16**

of discretion," *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, and there is a distinction between the power to hear state law claims and the discretionary exercise of that power. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349-50 (1988). In order to decide whether to exercise jurisdiction over pendent state law claims, a district court should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity...." *Id.* In a case in which all federal law claims are eliminated before trial, the balance of these factors will generally point toward declining to exercise jurisdiction over the remaining state law claims. *Id.* at 350 n. 7. Although the decision to decline the exercise jurisdiction over the remaining state law claims is not mandatory, the U.S. Supreme Court counsels that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Workers*, 383 U.S. at 726.

While this Court recommends summary judgment in favor of Defendants as to the state civil conspiracy claim because the law is clear, it finds the balance of factors weighs in favor of remand with respect to the claims under the competitive bidding laws. In this case, the dismissal of the federal claims will allow the state court to consider and resolve whether the competitive bidding statutes were violated and if so, resolve unsettled questions of state law with respect to the proper measure of damages. Under these circumstances, the interests of federalism and comity persuade this Court that the remand of this matter is appropriate. Accordingly, the Court recommends the remand of the remaining claim under the competitive bidding laws.

**IV.
Conclusion**

With the exception DeAtley's claim relating to the violation of competitive bidding laws, the Court concludes that Defendants have established that they are entitled to a judgment as a matter of law on the remaining claims. As the Court recommends the dismissal of DeAtley's federal claims, it recommends the sole remaining claim for violation of competitive bidding laws be remanded to state court.

## **REPORT**

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY RECOMMENDED that:**

1) Defendant City of Lewiston's Motion for Partial Summary Judgment (Docket No. 34), filed on September 2, 2005 and joined by Defendant Nez Perce County, be GRANTED IN PART AND DENIED IN PART.

(2) Defendant City of Lewiston's Amended Motion for Summary Judgment (Docket No. 43), filed on September 21, 2005, be GRANTED IN PART AND DENIED IN PART.

3) Defendant Nez Perce County's Motion to Strike (Docket No. 59), filed on October 31, 2005, is DENIED AS MOOT.

4) Plaintiffs' Motion to Strike (Docket No. 70), filed on November 7, 2005, is DENIED AS MOOT.

5) Defendant Nez Perce County's Second Motion to Strike (Docket No. 81), filed on November 21, 2005, is DENIED AS MOOT.

**IT IS FURTHER RECOMMENDED that** DeAtley's First Cause of Action under the competitive bidding laws be remanded to the Second District for Judicial District for the State of Idaho, in and for the County of Nez Perce.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: February 24, 2006

Honorable Mikel H. Williams
United States Magistrate Judge